Argued and submitted June 7, affirmed August 31, 1983

## CIRCUIT COURT OF OREGON, FIFTEENTH JUDICIAL DISTRICT, JUVENILE JUDGE, HONORABLE RICHARD L. BARRON et al,
*Petitioners on Review,*

*v.*

## AFSCME LOCAL 502-A,
*Respondent on Review.*

(CA A23894; SC 29403)

669 P2d 314

William F. Gary, Solicitor General, Salem, argued the cause for petitioners on review. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and Jan Peter Londahl, Assistant Attorney General, Salem.

Henry H. Drummonds, Eugene, argued the cause for respondent on review. With him on the briefs were Wendy L. Greenwald, and Kulongoski, Heid, Durham & Drummonds, Eugene.

Before Linde, Presiding Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

ROBERTS, J.

Peterson, J., concurred and filed an opinion.

## ROBERTS, J.

■ This case presents the issue whether juvenile court judges and counselors are regulated by the Public Employe Collective Bargaining Act (PECBA), ORS 243.650 through 243.782, and whether their inclusion therein prompts a conflict with article III, section 1 or with article VII, section 1 (amended) of the Oregon Constitution. We hold that these employment relationships are subject to PECBA and find no constitutional infirmity. We affirm the Court of Appeals.

The Coos County Board of Commissioners, the county juvenile department and a juvenile court judge appeal from an order of the Employment Relations Board (ERB) and an affirmance of the order by the Court of Appeals requiring the judge to bargain collectively with AFSCME Local 502-A (union), the exclusive representative of county juvenile court counselors. Petitioners argue that the judge and the court counselors are not subject to PECBA because that act conflicts both with the judge's statutory authority under ORS 419.604(1) to hire and fire juvenile court counselors and with the constitutional requirement of separation of powers, article III, section 1 and article VII, section 1 (amended) of the Oregon Constitution.

Petitioners do not dispute that juvenile court judges are public employers and juvenile court counselors are public employes as those terms are defined in ORS 243.650(17) and (18) of PECBA.[1] They argue that the application of PECBA to themselves and their employes creates an irreconcilable conflict with ORS 419.604(1). They view PECBA as a general statute and ORS 419.604(1) as a specific statute and assert

---

[1] ORS 243.650(17) provides:

" 'Public employe' means an employe of a public employer but does not include elected officials, persons appointed to serve on boards or commissions or persons who are 'confidential employes' or 'supervisory employes.' "

ORS 243.650(18) provides:

" 'Public employer, means the State of Oregon or any political subdivision therein, including cities, counties, community colleges, school districts, special districts and public and quasi-public corporations, except mass transit districts organized under ORS 267.010 to 267.390. 'Public employer' includes any individual designated by the public employer to act in its interests in dealing with public employes."

that the more specific statute should prevail. Petitioners further assert that should this court find PECBA applicable to this employment relationship the requirement of separation of powers will be violated. Petitioners urge that the judiciary must maintain exclusive control of its employment relationship with its employes in order to ensure the smooth administration of justice and preserve its independence as the third department of government.

Petitioners argue that ORS 419.604(1) is a delegation of "plenary" power. That statute provides:

> "Subject to subsection (2) of this section, the judge or judges of the juvenile court in any county having a population less than 300,000 shall appoint or designate one or more persons of good moral character as counselors of the juvenile department of the county, to serve at the pleasure of and at a salary designated by the appointing judge and approved by the budget-making body of the county.

> "* * * * *."

Petitioners contend that any confinement of a judge's authority to hire, fire and set salaries, even the imposition under PECBA of good faith in the duty to bargain collectively, is antithetical to the language of ORS 419.604(1). Petitioners assert:

> "If the juvenile court signs a collective bargaining agreement setting terms and conditions of employment the court's employes no longer serve at its pleasure. * * * If the court fails to sign the agreement, the employes ultimately will serve subject to a bargaining agreement set by arbitration as interpreted by the ERB. In neither case do the employes serve pursuant to the plain terms of ORS 419.604(1); the pleasure or displeasure of the juvenile court no longer counts on the issue of whether a juvenile counselor is to be terminated."

We do not read ORS 419.604(1) so absolutely. Whenever possible we strive to construe statutes so as to bring about consistency. *McLain v. Lafferty,* 257 Or 553, 558, 480 P2d 430 (1971). In *AFSCME v. Executive Dept.,* 52 Or App 457, 628 P2d 1228 (1981) the Court of Appeals adopted an interpretation which gave meaning to both the PECBA and the civil service laws and successfully harmonized seeming conflicts between the two. A similar interpretation is applicable here.

ORS 419.604(1) confers to the juvenile court judge the authority to hire, fire and set salaries. In *Norman v. Van Elsberg,* 262 Or 286, 497 P2d 204 (1972) we held that as between the judge or the county budgeting body it was the judge who was empowered to fix salaries, and the county had authority to reject the judge's decision only if the salary were unreasonable. For purposes of PECBA's definitions of public employer it is the judge who is by statute "delegated by the public employer to act in its interests in dealing with public employes." ORS 243.650(18).

■ We do not find that the provisions of PECBA divest the juvenile court of its authority to regulate the employment of its counselors. Rather, PECBA sets the manner of the exercise of the authority delegated in ORS 419.604(1). It requires that public employers and employes bargain collectively, that is "meet" and "confer in good faith" concerning "employment relations", which include topics such as salary, hours, grievance procedures and other "conditions of employment." The purpose of collective bargaining is to arrive at a written agreement which sets the terms of the employment relationship by which both sides are bound. As pointed out in the Court of Appeals opinion there is "* * * nothing in the *language* of ORS 419.604(1) that makes it less consistent with the simultaneous operation of PECBA than other statutes that give public officers or bodies authority to engage employees and establish employment terms." (Emphasis in original.) 61 Or App at 315. The court cited ORS 204.635(1) which was construed in *Hockema v. OSEA,* 34 Or App 527, 579 P2d 282, *rev den,* 283 Or 235 (1978), and ORS 204.601, ORS 332.505 and ORS ch 240 as construed in *AFSCME, supra* where PECBA was held to apply to classes of public employes. Nothing in ORS 419.604(1) compels a different interpretation.[2]

---

[2] We note that very recent amendments to ORS 8.235, a part of the Court Reform Act, support our analysis. Section 27a of House Bill 2364 provides:

"All officers and employes of the court of this state who are referred to in ORS 8.235 [ORS 8.235 includes trial court employes, among whom juvenile court counselors are numbered] and section 27 of this Act are subject to collective bargaining to the extent provided in ORS 243.650 to 243.782, and ORS 8.235 and section 27 of this Act shall not be construed to reduce or eliminate any collective bargaining rights those officers and employes may have under ORS 243.650 to 243.782."

Petitioners attack this legislation and its procedures for ERB administrative review as a violation of "separation of powers," invoking both article III, section 1 and article VII, section 1 (amended) of the Oregon Constitution. This case illustrates the importance of attention to the constitutional text. Each provision must be addressed on its own terms in the context of the distinct issues with which it is concerned.

Article III, section 1 provides:

> "The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.—

Under this provision, our inquiry is whether a "person" or member of one department is exercising a function of another department of government. In this case, the specific article III, section 1 issue is whether ERB, an administrative body placed within the executive branch by article III, section 1, exercises a judicial function when it orders the employer judge to bargain collectively with the representative of the counselors' union.

Article VII, section 1 (amended) provides in relevant part:

> "The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *"

When this provision is invoked it becomes our task to examine whether some other department of government, by legislation or otherwise, prevents or obstructs the courts' exercise of its judicial power. In this case it is claimed the legislature has interfered with the performance of a judicial function both by enacting legislation (PECBA) prescribing the manner in which the juvenile court must deal with its counselors and by delegating to ERB the authority to resolve employment disputes between the parties.

---

This bill became effective upon signing on August 4, 1983. It is a clear statement that PECBA was intended to supersede ORS 419.604(1) to the extent necessary to give effect to the rights extended in the collective bargaining act.

■ The initial inquiry under both these provisions is the same: Is the appointment, termination and salary designation of juvenile court counselors an exercise of the "judicial power of the state" for purposes of article VII, section 1, and is this task a judicial "function" under article III, section 1. We need not engage in extended analysis of this issue, for in this case the answer lies in ORS 419.604(1), in which the legislature delegated these tasks to the judiciary. No one has challenged the delegation of this authority to the judge as a violation of the separation of powers. For purposes of this case, we assume that these tasks became judicial functions as that term is used in article III, section 1 because the legislature so assigned them. That is to say we assume for this case that the legislature could properly place juvenile court counselors in the judicial branch and also that appointment, termination and salary designation are tasks which a judge can properly perform to the extent that they do not excessively burden or interfere with her adjudicative functions. If the legislature had chosen instead to place counselors in the executive department, for example under the Childrens' Services Division, and then assigned judges the task of appointing them, article III, section 1 would prevent such an arrangement.

Assuming these tasks are proper judicial functions we must determine whether ERB performs any of these in violation of article III, section 1 when it mandates collective bargaining between judges and counselors. Petitioners assert that it will no longer be the juvenile court that administers the counselors but "the Employment Relations Board, for it is the ERB which ultimately decides, by conclusive fact-finding and rulemaking, that a certain discharge [or condition of employment] is or is not appropriate."

We disagree. ERB does not appoint or discharge counselors, nor does it designate salaries or conditions of employment. There may be occasions when ERB is called upon to interpret and enforce the provisions of the collective bargaining agreement or to find facts to resolve an impasse concerning these issues.[3] This is not the performance of a

---

[3] ERB is authorized by statute to review personnel action affecting non-union employes; review and enforce arbitration awards involving union employes, ORS 240.086; determine the appropriate bargaining unit, ORS 243.682-.686; assign mediators in the event of failure to reach an agreement, ORS 243.712; carry out factfinding,

judicial function. It is, rather, the performance of ERB's own administrative function, to ensure that public employers administer their employment relationships in compliance with state laws and the applicable collective bargaining agreement.

■ The existence of an administrative forum for the resolution of judicial department employment disputes is not unique to ERB. As the Court of Appeals notes "courts and their employees are subject to the Workers' Compensation Law. Benefits to employees under that law can be subject to determination by an executive agency * * *." 61 Or App at 319. We note also that the Employment Appeals Board reviews the payment of benefits to unemployed workers. ORS 657.275. In addition, the Commissioner of the Bureau of Labor and Industries is charged with rulemaking, conciliation and fact finding authority to enforce laws prohibiting discrimination by employers on the basis of race, religion, color, gender, national origin, marital status, age and juvenile criminal record. ORS 659.010 through 659.060. In any of these examples an administrative agency may decide a matter touching on the employment relationship between the juvenile court and its counselors.

■ In this case ERB has ordered the judge to bargain collectively, that is, to comply with PECBA. In so doing it does not itself perform the employment function delegated by statute to the juvenile court. It remains with the court to negotiate the conditions of employment for its counselors. We hold that ERB is not performing a judicial function when it compels the juvenile court to bargain collectively with its counselors.

■ There can be no question that the legislature may enact laws prescribing the exercise of judicial powers. "The rule has evolved that legislation can affect [the courts] so long as it does not unduly burden or substantially interfere with the judiciary." *Sadler v. Oregon State Bar,* 275 Or 279, 285, 550 P2d 1218 (1976) citing *Ramstead v. Morgan,* 219 Or 383, 347 P2d 594 (1959). Most of the court's activity is regulated by statute. Almost all of Title I of the Oregon Revised Statutes is devoted to this subject. *See also* Oregon Rules of Civil Procedure;

---

ORS 243.722; initiate binding arbitration, ORS 243.742; conduct proceedings on complaints of unfair labor practices by employers, employes and labor unions, adopt rules and monitor elections, ORS 243.766.

Oregon Evidence Code, ORS 40.010 through 40.585. The article VII, section 1 concern is whether the challenged legislation, here PECBA, interferes with the judiciary in a manner which prevents or obstructs the performance of its irreducible constitutional task, adjudication.

For petitioners, unilateral employer control of conditions of employment is essential to the administration of justice in the juvenile courts. They argue:

"A collective bargaining agreement which contains the usual clause prohibiting discharge except for just cause and providing for a grievance procedure in the event of conflict inhibits the necessary authority of the trial court to control the administration of the court. If the trial court lacks authority to make the kinds of personnel decisions necessary to the effective management of the court system, it cannot guarantee that 'justice shall be administered, openly and without purchase, completely and without delay.' Or Const, Art I, § 10."

We are unable to see how this legislation will have such a crippling effect on the adjudication process. PECBA does not divest the juvenile court of authority to make personnel decisions, nor does the mandate to bargain collectively hinder the court in the resolution of cases.[4]

We have upheld legislation with considerably more direct impact on the adjudicative process. In *State ex rel Emerald PUD v. Joseph,* 292 Or 357, 640 P2d 1011 (1982) we upheld a statute which imposed a 90 day deadline between appeal and decision in certain cases. Because the court was able to fulfil its judicial responsibility in most cases within the time limit any burden on the adjudicative process was not of constitutional magnitude. In *SER Acocella v. Allen,* 288 Or 175, 604 P2d 391 (1979) the court's power to compel attorneys, in that case the State Public Defender, to represent indigent defendants was restricted by a statute which lodged the decision on the extent of services the Public Defender could render with a Public Defender Committee. If the Committee determined that the office was unable to provide representation the court could not compel it to do so. The court found no undue burden or undue

---

[4] We note that these counselors have been included within respondent union since union certification in March 1974 and since that time employment relations have been regulated by collective bargaining agreements.

interference on the court's ability to perform its judicial function, other criminal defense attorneys being available for the court to call into service. 288 Or at 181.

Our cases indicate that general institutional inconvenience is not enough to render legislation constitutionally defective. Only an outright hindrance of a court's ability to adjudicate a case such as occurred in *State ex rel Bushman v. Vandenberg*, 203 Or 326, 337, 276 P2d 432, 280 P2d 344 (1955) or the substantial destruction of the exercise of a power essential to the adjudicatory function, *State ex rel Oregon State Bar v. Lenske*, 243 Or 477, 405 P2d 510, 407 P2d 250 (1966), *cert denied*, 384 US 943, 86 S Ct 1460, 16 LEd 2d 541 will prompt an article VII, section 1 violation.

We do not view PECBA's mandate to petitioners to bargain collectively and its requirement that the juvenile court judge refrain from imposing terms and conditions on the employment relationship in violation of the contract as an interference of unconstitutional proportion. The courts' ability to adjudicate cases is in no way reduced by the obligation to bargain with counselors concerning employment conditions.

Assertions are made that in the event of a dispute ERB may impose or approve conditions of employment which will handicap the courts, rendering it incapable of carrying out its judicial business. These concerns are premature. No such issues are presented by this case. An apprehension of unconstitutional interference does not suffice to invalidate the statute. *See City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 295-96, 639 P2d 90 (1981) (Linde, J., concurring).

The Court of Appeals is affirmed.

**PETERSON, J.**, concurring.

Although I agree with the analysis and conclusions of the majority, I write separately to express my concern as to the constitutionality of ORS 419.604(1). It purports to delegate to judges the duty to hire and set the salaries of juvenile counselors. No question has been raised whether they are "employees" of the judicial department, as defined in ORS 243.650(17). The record suggests, however, that they may be employees of the county.

I question the constitutionality of ORS 419.604(1). If it charges personnel within one department of government with the responsibility to hire persons who may be employees of another department of government, it is likely unconstitutional. The majority opinion notes, 295 Or at 548, that this question has not been raised.