Argued and submitted November 10, 2020, reversed and remanded
April 27, 2022

Rory BIALOSTOSKY,
an individual in *pro se*,
*Plaintiff-Appellant,*

*v.*

Teri CUMMINGS,
aka Theresa Cummings,
in her official capacity as
a West Linn City Councilor,
*Defendant-Respondent.*

Clackamas County Circuit Court
19CV11216; A172134

511 P3d 31

In this civil case, plaintiff appeals the trial court's denial of partial summary judgment in his favor and entry of summary judgment in favor of defendant. After plaintiff filed suit to obtain public records from defendant, an elected council member of West Linn, the trial court concluded that, as a matter of law, individual local elected officials, like a city councilor, were not subject to the public records law. *Held*: Following the traditional statutory construction framework, the Court of Appeals analyzed the text, context, and legislative history behind the relevant statutes. In this case, all three analyses support a construction that individual local elected officials are included within the public records law. The trial court erred by entering summary judgment for defendant and denying plaintiff's motion for summary judgment.

Reversed and remanded.

Henry C. Breithaupt, Senior Judge.

Nathan R. Morales argued the cause for appellant. Also on the briefs were Julia E. Markley and Perkins Coie LLP.

Christopher K. Dolan argued the cause for respondent. Also on the brief were Timothy V. Ramis and Jordan Ramis PC.

Before Pagán, Presiding Judge, and Lagesen, Chief Judge, and DeVore, Senior Judge.*

_____

* Pagán, J., *vice* DeHoog, P. J.; Lagesen, C. J., *vice* Hadlock, J. pro tempore.

PAGÁN, P. J.

Reversed and remanded.

DeVore, S. J., concurring.

**PAGÁN, J.**

This case requires us to decide whether defendant, an elected member of the West Linn City Council (the council), is herself a "public body" subject to the Oregon Inspection of Public Records law, ORS 192.311 - 192.478, and, if so, whether the notes that she made during her work as a councilor are public records that must be disclosed. Plaintiff sued defendant under Oregon's public records laws, seeking production of handwritten notes that defendant created while serving on the council. The trial court concluded that defendant was not a "public body" and, therefore, her notes were not "public records," as defined by ORS 192.311, and it entered summary judgment in defendant's favor. For the reasons explained, we conclude otherwise and reverse and remand.

## FACTS

The facts, as they relate to the determination of this appeal, are undisputed. Defendant was a city councilor for the City of West Linn. Plaintiff requested the opportunity to inspect and copy defendant's handwritten notes made during the course of her work as a West Linn city councilor. According to defendant, the notes were created during city council meetings, work sessions, goal-setting sessions, interview sessions, neighborhood association meetings, citizen advisory group meetings, and constituent meetings. Defendant conceded that she had created handwritten notes in her role as a city councilor, and that she was in possession of those notes at the time plaintiff made the requests.

Believing the records to be city records, plaintiff originally requested them from the West Linn City Recorder, who explained that the city did not have the requested records in its possession, but that the city had requested that defendant provide the records for plaintiff's inspection. Defendant then refused to provide the records because she did not believe that her notes were "public records" under ORS 192.311(5). The city told plaintiff that it was "not the custodian of the requested records" and therefore its response was complete. The city provided him with no documents. Plaintiff then sent defendant a direct request for the records. Defendant never responded to the request.

Subsequently, plaintiff filed this action for declaratory and injunctive relief under the Inspection of Public Records law, specifically ORS 192.427 and ORS 192.431.[1]

Soon after, plaintiff moved for partial summary judgment to establish the "notes and notebooks taken and maintained in [defendant's] official capacity as a West Linn City Councilor to be public records under ORS 192.311." Defendant responded and cross-moved for summary judgment on the basis that she could not constitute a "public body" under ORS 192.311(4). After a hearing, the trial court concluded that defendant was not a public body and granted defendant's motion.

On appeal, assigning error to both the denial of his motion for partial summary judgment and the grant of defendant's similar motion, plaintiff reprises his argument that defendant is a "public agency of this state," and therefore a "public body" under ORS 192.311(4). Alternatively, plaintiff contends that the West Linn City Council is itself a public body and that defendant's notes were "prepared, owned, used or retained" by the council, and thus are subject to disclosure.

In response, defendant contends that the text, context, and legislative history of ORS 192.311(4) support a far narrower meaning of "public body," one that excludes local elected officials such as defendant. According to defendant, the only natural persons subject to the Inspection of Public Records law are "state officers" and that as a local elected official, defendant is not a state officer. With the parties' arguments and procedural posture in mind, we turn to our analysis.

_____

[1] ORS 192.427 provides, in part:

"In any case in which a person is denied the right to inspect or to receive a copy of a public record in the custody of an elected official, or in the custody of any other person but as to which an elected official claims the right to withhold disclosure * * * [the requesting party] may institute proceedings for injunctive or declaratory relief in the appropriate circuit court[.]"

ORS 192.431(1) explains the authority of the court hearing a case; ORS 192.431(2) instructs a court to address proceedings under the Inspection of Public Records law "at the earliest practicable date and expedited in every way"; and ORS 192.431(3) allows a person seeking public records to recover costs and fees in certain circumstances.

ANALYSIS

Although this case was decided on cross-motions for summary judgment, the ultimate question of this case is one of statutory interpretation. Our duty when interpreting a statute "is simply to ascertain and declare what is, in terms or in substance, contained therein." ORS 174.010. We are not to rewrite a statute through additions or omissions, and where possible, we adopt a construction that gives effect to all provisions of a statute. *Id.* Our goal in construing a statute is to "pursue the intention of the legislature if possible." ORS 174.020. "In construing a statute, [a] court is responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

In order to properly construe a statute, we employ the familiar framework set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P3d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). In this framework, we begin with the text and context of a statute, and to the extent we deem it useful, the legislative history underpinning an enactment. *Gaines*, 346 Or at 171-72. If the legislature's intent is still unclear after our examination of the text, context, and legislative history, we may resort to general maxims of statutory construction to resolve any remaining uncertainty. *Id.* at 172.

A.   *"Public Body"*

Turning to our construction of the relevant statute, we begin with the text. Whether defendant is a "public body" and whether her notes constitute "public records" depends on the interplay between two subsections in the definitional provisions of the Inspection of Public Records law.

The first subsection defines "public body" and provides:

> "'Public body' includes every state officer, agency, department, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council, or agency thereof; and any other public agency of this state."

ORS 192.311(4).

Both parties agree that the text, on its face, does not unambiguously encompass an individual local elected official, like defendant; the local governmental entities listed appear to be just that: entities and not individuals. Defendant points to this fact, in addition to the provision's explicit reference to a "state officer," to argue that the legislature's omission of any reference to a local officer means that local officials are excluded from its coverage. Plaintiff points to the legislature's use of the word "includes" as indicative of a legislative intention that the list of covered bodies is not exclusive. Plaintiff further argues that the legislature's use of the word "agency" indicates an intention to include individual public officials as well as entities, noting that the definition of "state agency," contained in ORS 192.005(6)(a), includes "state officer[s]," an indication that the legislature views the word "agency" as encompassing individuals. In other words, in plaintiff's view, the word "agency" includes both individuals and entities, such that the legislature's use of it in several places in ORS 192.311(4) demonstrates a broad intention that individual public officials would qualify as public bodies.

As both parties' readings of the statutory text are plausible, we turn to its context. As explained, that context points in the direction of plaintiff's reading because it points towards the conclusion that the legislature intended for ORS 192.311(4) to be a broadly inclusive provision.

Context includes prior judicial opinions interpreting a statutory provision, *State v. Lam*, 176 Or App 149, 154, 29 P3d 1206 (2001), and the Supreme Court previously interpreted the provision at issue in *State ex rel Frohnmayer v. Oregon State Bar*, 307 Or 304, 307-08, 767 P2d 893 (1989) (discussing *former* ORS 192.410 (1987), *renumbered as* ORS 192.311 (2017)). In that case, the court indicated that, consistent with the use of the word "includes," the provision should be read broadly and inclusively. In its determination whether the Oregon State Bar, a "public corporation and instrumentality of the Judicial Department of the State of Oregon," constituted a "state agency" or an "other public agency of this state," the Oregon Supreme Court first observed that the definitions in the statute did not mention either "public corporation" or an "instrumentality." *Id.* at 307-08. The

court observed that the definition of "state agency" in the statute is "inclusive and the examples given therein are illustrative rather than exclusive." *Id.* at 308. At the time, *former* ORS 192.410(2) (1987) provided that "'State Agency' includes every state officer, agency, department, division, bureau, board and commission."[2] The court then referred to a statute defining the status of the bar, ORS 9.010, to conclude that the bar was a state agency, because it was "an instrumentality of the Judicial Department, and * * * it perform[ed] statewide functions on behalf of that department." *Id.* at 309.[3]

The *Frohnmayer* analysis points toward the conclusion that a city councilor is part of the "governing body" of a city. The present structure of the provision defining "public body" is identical to the prior structure of the provision defining "state agency." *Compare* ORS 192.311(4) *with former* ORS 192.410(2) (1987). Provided that identical structure, it would be inconsistent to construe present ORS 192.311(4) as "exclusive," while reading *former* ORS 192.410(2) as "illustrative" and "inclusive." Reading the list "every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council, or agency thereof" as "inclusive" and "illustrative," rather than "exclusive," the legislative intent to include *all* local government is manifest. ORS 192.311(4); *Frohnmayer*, 307 Or at 308. It is undisputed that the city council is the governing body of a city and that city councilors make up the city council. ORS 221.110 (city officers include councilors); ORS 221.120(6) ("The powers of the city shall be vested in the council."); ORS 221.410(1) ("[A] city may take all action necessary or convenient for the government of its local affairs."). The same is true for the home rule city of West Linn. *See* 1994 West Linn Charter § 4, https://www.codepublishing.com/OR/WestLinn/html/WestLinnCH.html (last visited Apr 20, 2022) (city has all

---

[2] *Former* ORS 192.410(2) (1987) was amended in 1989. Or Laws 1989 ch 377, § 1. The court in *Frohnmayer* examined the 1987 version of the statute.

[3] The precise question *Frohnmayer* addressed was whether the bar was a state agency, with public records administrative review conducted by the Attorney General, or whether it was a local agency, with public records administrative review conducted by the local district attorney. The court concluded that Attorney General review applied. 307 Or at 309.

powers allowed by law); *id.* § 6 (powers of city vested in council); *id.* § 7 ("The Council shall be composed of a Mayor and four Councilors nominated and elected from the City at large.").

Reading the provisions broadly is also consistent with the legislative policy underlying the Inspection of Public Records law, as that policy has been explained by the Supreme Court. That court has stated that the legislative policy concerning public records, expressed in ORS 192.314, makes clear that disclosure "is the general rule to which expressly provided exemptions are the exceptions." *City of Portland v. Rice*, 308 Or 118, 121, 775 P2d 1371 (1989). Exemptions from disclosure "must be explicitly stated by statute and not merely implied by the law." *Colby v. Gunson*, 224 Or App 666, 675, 199 P3d 350 (2008). The Inspection of Public Records law is built on the underlying policy that favors disclosure of public records. *Id.* Oregon has a "strong and enduring policy that public records and governmental activities be open to the public." *Jordan v. MVD*, 308 Or 433, 438, 781 P2d 1203 (1989). Reading the definition of "public body" narrowly, as defendant would have us do, would drastically shrink the public's access to the records of its public officials. Presently, the express exemptions from disclosure include 41 types of information that are exempt unless public interest requires disclosure, ORS 192.345, and 43 types of information that may be disclosed only upon certain enumerated conditions precedent, ORS 192.355. Although the exemptions in those sections have ballooned in the intervening years, the original enactment contained eight types of information exempt with the public interest test and nine types of information exempt with conditions precedent to disclosure. *See* Or Laws 1973, ch 794, § 11. The larger point in comparing who is subject to the disclosure requirements with what is exempted from disclosure is that, in light of the express policy favoring disclosure, it is unlikely that the legislature would have left exclusion of *all* local elected officials to inference. Put differently, if the legislature had intended to exempt all individual local elected officials from the definition of public body in the Inspection of Public Records law, the context tells us that the legislature would have done so expressly.

One additional contextual clue provides support for the conclusion that the legislature intended to include individual local elected officials within the universe of public bodies subject to the Inspection of Public Records law, particularly when read against the background of the legislative history. When a person is denied inspection of a public record in the custody of an elected official, that person is not permitted to file a petition with the Attorney General or district attorney and must instead file an action in the appropriate circuit court. ORS 192.427. The fact that the legislature provided a remedy for citizens deprived of the right to inspect the records of local elected officials strongly supports the conclusion that the legislature viewed such individual officials as falling within the purview of the Inspection of Public Records law. If individual local elected officials were not public bodies, as defendant argues, the remedy supplied by ORS 192.427 would be meaningless to those seeking to inspect the records of local elected officials. One obvious policy goal of preferring courts to administrative review in the case of elected officials is to prevent conflicts between elected officials at similar levels of government. As noted in *Frohnmayer*, the administrative review process is bifurcated—appeals from denials of disclosure from state agencies are considered by the Attorney General, while those issues for public bodies other than state agencies are considered by the district attorney. ORS 192.411 (appeals from state agency); ORS 192.415 (appeals from other than state agency); *Frohnmayer*, 307 Or at 308. The legislature's decision to provide an alternative to the district attorney for certain record requests indicates a concern about potential conflicts between local officials who would be subject to those requests. Such concerns would not exist if local officials were exempt from disclosure.

In arguing for a contrary result, defendant points to our decision in *Independent Contractors Research Institute v. DAS*, 207 Or App 78, 93-94, 139 P3d 995, *rev den*, 341 Or 579 (2006). In *Independent Contractors*, we analyzed the meaning of "public body" as defined in the public meetings law, ORS 192.610(4), and concluded that individual officers, such as the Chief Procurement Officer of the Department of Administrative Services, were not a "public body" covered by

that provision. *Id.* at 94. We considered an Attorney General Opinion from 1981 that itself analyzed whether a panel member appointed by the governor to make "an economic assessment of various options [for potential changes to the Washington Public Power Supply System]" was a "public body." 42 Op Atty Gen 187, 187 (1981). In 1981, the Attorney General concluded that "an individual public officer is not a 'public body' as that term is used in the Public Meetings Law." *Id.* at 189.

We concluded, like the Attorney General, that "redefining 'public body' as that term is used in the public meetings law to include a single individual is a task for the legislature and not for this court." *Independent Contractors*, 207 Or App at 94. However, *Independent Contractors* does not govern the construction of the term "public body" within the Inspection of Public Records law.

The structure of the text between the definitional sections of the Inspection of Public Records law and the public meetings law is different in a meaningful way. For purposes of the latter, ORS 192.610(4) provides:

> "'Public body' means the state, any regional council, county, city or district, or any municipal or public corporation, or any board, department, commission, council, bureau, committee or subcommittee or advisory group or any other agency thereof."

That is, in the public meetings law, the definitional provision is drafted as "'[p]ublic body' *means* the state, [etc.]", while in the Inspection of Public Records law, the pertinent provision is drafted as "'[p]ublic body' *includes* every state officer, [etc.]." *Compare* ORS 192.610(4) *with* ORS 192.311(4) (emphases added). "Generally, the legislature intends something quite different when it says a particular statutory term 'means' something as opposed to when it says that a term 'includes' something." *State v. Fox*, 262 Or App 473, 483, 324 P3d 608, *rev den*, 356 Or 163 (2014). "Means" is regularly used to signal when "the definition restricts or limits the meaning of a word." *Dowell v. Oregon Mutual Ins. Co.*, 268 Or App 672, 678, 343 P3d 283 (2015), *aff'd*, 361 Or 62, 388 P3d 1050 (2017). On the other hand, "includes" is often used to signal that the legislature did "not intend to

confine the scope of a general term in a statute according to the characteristics of the listed examples." *State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011). That is, "includes" as used in a statutory provision often "convey[s] an intent that an accompanying list of examples be read in a nonexclusive sense." *Id.* And, as previously explained, the case law construing the public records law has, consistent with the legislature's use of the word "includes," concluded that the legislature intended a broad and inclusive construction.

Having concluded that the text and context of ORS 192.311(4) support the conclusion that a city councilor is a public body within the meaning of the statute, we turn to the legislative history. The legislative history associated with the enactment confirms our interpretation of the meaning of "public body" in ORS 192.311(4).

The Inspection of Public Records law was originally enacted as House Bill (HB) 2157 in 1973. *See* Or Laws 1973, ch 794. Contemporaneous with consideration of HB 2157, the Joint Special Committee on Professional Responsibility was also considering Senate Bill (SB) 15, which addressed open meetings for "governing bodies."[4] Senator Fred Heard commented that a similar enactment in California had helped to bridge skepticism and add a great deal of credibility to state government. Minutes, Joint Special Committee on Professional Responsibility, HB 2157, Feb 26, 1973, 2 (statement of Sen Heard).[5]

In defendant's view of the legislative history, the choice to list only "state officers" and not "all officers" provides "compelling" evidence that the legislature "unequivocally narrowed Oregon's public records disclosure laws." For that proposition, defendant points to the previous public records law, *former* ORS 192.005 - 192.170 (1971), and claims that the difference in language is dispositive of legislative

_____

[4] House Bill 2157 originally included provisions for open meetings; however, those provisions were deleted by amendment and Senate Bill 15 was considered instead. Minutes, Joint Special Committee on Professional Responsibility, May 14, 1973, 3.

[5] The audio of the February 26, 1973, committee meeting is unavailable; thus, we reference the minutes. *Wright v. Turner*, 354 Or 815, 823 n 5, 322 P3d 476 (2014).

intent.[6] But a full assessment of the legislative history indicates a far different legislative intention than defendant asserts.

The previous enactment, just prior to repeal as part of HB 2157, required that the "custodian of any public records of the state or a political subdivision" provide proper and reasonable opportunities to inspect public records and receive copies upon payment of a fee. *See former* ORS 192.030 (1971), *repealed by* Or Laws 1973, ch 794, § 34. "Political subdivision" in turn, was defined to "mean[ ] a city, county, district or any other municipal or public corporation in this state." ORS 192.005(4) (1971). Thus, in comparing the previously applicable definition of ORS 192.005(4) with the definition proposed in HB 2157, § 2(1)—which is identical to the present ORS 192.311(4)—it is not at all apparent that the legislature intended to narrow the scope of entities or officers subject to public records disclosure.

A primary proponent of the Inspection of Public Records law was Oregon Attorney General Lee Johnson. Minutes, Joint Special Committee on Professional Responsibility, HB 2157, Feb 26, 1973, 2 (statement of Attorney General Johnson). Attorney General Johnson testified that, at the time, Oregon's laws did not adequately protect the public's right to know and he had requested that HB 2157 be introduced to provide better governmental policy toward public access. *Id.* The general thrust of HB 2157 was that government records are public information and exceptions should be narrowly and specifically defined and only permitted where there was an overwhelming public interest in maintaining confidentiality. *Id.* Attorney General Johnson testified that although the existing laws provided a broad prescription that public records were subject to inspection by any citizen, the testimonial, executive privilege established by ORS 44.040(1) undermined the public's access to records. *Id.* The draft of HB 2157 expressly repealed that

---

[6] Defendant cites a 1959 version of ORS 192.030 which applied to "[a]ll officers having custody of any *** city or town records." That particular language was amended in 1961, Or Laws 1961, ch 160, § 4, and thus provides no basis for comparison to the language being considered in HB 2157. The appropriate comparison is to the operative statute immediately preceding the consideration of HB 2157.

executive privilege.[7] *Id.* Notably absent from Attorney General Johnson's testimony is any suggestion that HB 2157 was intended to narrow the universe of government entities or elected officials covered by disclosure requirements. To the contrary, HB 2157 was designed in part to eliminate a "crutch [agencies] use to refuse disclosure and force the citizen to time consuming litigation." *Id. See also Papadopoulos v. St. Bd. of Higher Ed.*, 8 Or App 445, 449, 494 P2d 260 (1972) (discussing tension between ORS 192.030 (1971) and ORS 44.040(1)(e)).

About six weeks later, Attorney General Johnson again appeared before the committee and proposed an amendment to section 8 of HB 2157. Tape Recording, Joint Special Committee on Professional Responsibility, HB 2157, Apr 16, 1973, Tape 6, Side 1 (statement of Attorney General Johnson). He explained that, because of the potential for a conflict "between the district attorneys and locally elected officials," there would be "no administrative review" of requests for public records held by local elected officials, instead, the remedy would be a court proceeding.[8] *Id.* That testimony helps confirm that an original proponent of the bill understood that "locally elected officials" would be subject to the law and that the joint committee considering HB 2157 was well aware of that intention. Somewhat later in the hearing, Senator Fred Heard asked, "In a nutshell, which records have been opened up?" Tape Recording, Joint Special Committee on Professional Responsibility, HB 2157, Apr 16, 1973, Tape 6, Side 1 (statement of Sen Heard). Attorney General Johnson responded that few records were opened up; rather "more significant" was the "repeal" of areas previously considered confidential and limiting the idea that "an agency can make a subjective determination" about disclosure.[9] Tape Recording, Joint Special Committee on

---

[7] ORS 44.040(1)(e) was ultimately retained but executive privilege was limited to "public records exempt from disclosure under this 1973 Act." *See* Or Laws 1973, ch 794, § 13.

[8] The amendment was adopted and section 8 of HB 2157 is now generally codified as ORS 192.427.

[9] The definition of "public body" was not amended between the time Attorney General Johnson first discussed it with the committee in February 1973 and the time it was adopted as law. *Compare* HB 2157 § 2(1) *with* Or Laws 1973, ch 794, § 2(1). The upshot from the consistency in definition throughout the legislative

Professional Responsibility, HB 2157, Apr 16, 1973, Tape 6, Side 1 (statement of Attorney General Johnson). Those discussions and exchanges certainly do not support defendant's contention that the legislature intended to narrow the scope of public bodies subject to the public records law.

Finally, Representative Robert Ingalls asked Attorney General Johnson about the "public records that might be in the custody of an elected official on a city or county level." Tape Recording, House Committee on Professional Responsibility, HB 2157, May 14, 1973, Tape 9, Side 1 (statement of Rep Robert Ingalls). In his reply explaining the potential for conflict between elected officials, Attorney General Johnson specifically mentioned "county clerk, assessor, [and] sheriff." Tape Recording, House Committee on Professional Responsibility, HB 2157, May 14, 1973, Tape 9, Side 1 (statement of Attorney General Johnson). Each of those positions was then, as they are now, an elected county officer. ORS 204.005 (1973); ORS 204.005. That reply demonstrates that, within what is now codified as ORS 192.311(4), the legislature understood that local elected officials, even if not mentioned by name, office, or function, were included within the meaning of public body. The separate discussions between Attorney General Johnson, as a proponent of HB 2157, and two committee members specifically discussing local, not state, officials, adds considerable weight to the Oregon Supreme Court's observation that what is now ORS 192.311 is to be understood as "inclusive and the examples given therein are illustrative rather than exclusive." *Frohnmayer*, 307 Or at 308.

In sum, between the general zeitgeist moving the legislature toward improving citizen access to public meetings and records and the specific discussions over the potential for conflict between "locally elected officials," we conclude that the legislature intended that such individual officials would qualify as public bodies under the Inspection of Public Records law.[10]

---

process is that we can consider the scope of included officials discussed early in the process as the same as what was finally adopted.

[10] We do not need to address the extent to which *Marks v. McKenzie High School Fact-Finding Team*, 319 Or 451, 878 P2d 417 (1994), applies to the

B.   *"Public Record"*

As we have concluded that defendant in her role as a city councilor is a "public body" within the meaning of ORS 192.311(4), we next consider whether notes taken during "city council meetings, work sessions, goal-setting sessions, interview sessions, neighborhood association meetings, citizen advisory group meetings, and constituent meetings" are public records within the meaning of ORS 192.311(5).

Returning again to the text, ORS 192.311(5) provides:

"(a)   'Public record' includes any writing that contains information relating to the conduct of the public's business, including but not limited to court records, mortgages, and deed records, prepared, owned, used or retained by a public body regardless of physical form or characteristics."

It is beyond dispute that handwritten notes are "writings" for purposes of the Inspection of Public Records law. ORS 192.311(7) ("'Writing' means handwriting * * * and every means of recording.").

"Relating" as used in ORS 192.311(5) is a present participle of the word "relate." As used as a verb in this context, the most likely definition for "relate" is "to be in relationship: reference." *Webster's Third New Int'l Dictionary* 1916 (unabridged ed 2002). Thus, if the writing references the public's business, it would be "relating to," and our analysis continues.

"Public's business" has not been specifically construed to provide outer limitations to what is and what is not the public's business; however, several cases illustrate that, whatever the scope of that term, the work of a city councilor dealing with city council matters is within the "public's business." In a previous case, we concluded that a portion

---

determination of whether a city councilor is a public body under the second clause of ORS 192.311(4). *Marks* considered whether an ad hoc "team" of school administrators appointed to investigate problems at a high school was included within the definition of "public body." *Id.* at 456-57. Because we conclude that local officials are subject to disclosure under the statute, it follows that the *Marks* analysis—whether a private entity appointed by a government entity is subject to disclosure requirements—is inapposite.

of a report addressing "some questions about problems of hospital, physician-surgeon functioning, [and] the proper carrying on of business in the operating room" related to the public's business and was therefore a public record. *Bay Area Health District v. Griffin*, 73 Or App 294, 296, 698 P2d 977 (1985). Similarly, we have concluded that a "roster of names of substitute teachers, prepared by the school district, clearly relates to the conduct of the public's business in allowing temporary replacements to be found for regular teachers who are absent, whatever the cause." *Morrison v. School District No. 48*, 53 Or App 148, 158, 631 P2d 784, *rev den*, 291 Or 893 (1981). More recently, we determined that a list of concealed handgun licenses issued by a county sheriff related to the conduct of the public's business. *Mail Tribune, Inc. v. Winters*, 236 Or App 91, 95, 237 P3d 831 (2010).

Each of those cases dealt with public records of public business that are at least somewhat removed from the law or rulemaking function of a public body. In contrast, the writings in question in this appeal are the writings of a city councilor serving in her function as legislator of the city. As Oregon courts have long recognized, a core principle animating public records disclosure law is the "interest of the citizen in knowing what the servants of government are doing." *American Civil Liberties Union v. City of Eugene*, 360 Or 269, 281, 380 P3d 281 (2016) (citing *MacEwan v. Holm et al*, 226 Or 27, 38, 359 P2d 413 (1961) for the proposition that "[w]ritings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public servants"). Even assuming, *arguendo*, that a public hospital operating room report, a list of substitute teachers, or a list of concealed-carry permit holders establish the outer boundaries of what constitutes the "public's business," there is no way to construe that term to exclude the notes of a city councilor engaged in her official activities while also observing the broader animating principle of the Inspection of Public Records law.

That leaves the determination whether the undisputed facts, viewed in the appropriate light, allow for the conclusion that defendant's notes were "prepared, owned, used or retained" by her, as a public body. ORS 192.311(5)(a). Defendant's admissions resolve any factual question over whether those writings relate to the conduct of the public's business or were prepared, owned, used, or retained by a public body. First, defendant admitted that, "[o]ver the course of [her] three terms as city councilor, and in order to assist [her], and [her] alone, in [her] duties as a member of the Council, [she] often made hand-written notes." Those notes were made at "official meetings as well as informal encounters with constituents and other persons." From those admissions, it is clear that the notes relate to the conduct of the public's business and were prepared and used by a public body. Moreover, defendant admitted that "[t]hese handwritten notes are my personal notes," and that "[her] notes, to the extent they are retained, are stored at [her] residence." Those facts allow for a finding that defendant, acting as a public body, "owned or retained" the writings. As the statute is written, when addressing whether any particular writing related to the public's business is a "public record," any one of the conditions of preparing, using, owning, or retaining is sufficient to bring it within the purview of ORS 192.311(5). In this case, the facts, viewed in the appropriate light, establish that all four conditions are met.

Accordingly, because we have concluded that defendant was included within the meaning of "public body" under the second clause of ORS 192.311(4) and that her notes are "public records," we need not address plaintiff's argument that an individual city councilor is an "other public agency of this state" or whether the City of West Linn, as an entity separate from defendant, "prepared, owned, used or retained" the notes. The trial court erred in granting summary judgment to defendant and in denying plaintiff's motion for partial summary judgment.

Reversed and remanded.

**DeVore, S. J.,** concurring.

I would frame our question a little differently. This case requires us to decide whether the notebooks created

and kept by a city councilor are "public records" of a "public body" (ORS 192.311), making them subject to inspection under the Inspection of Public Records Law (ORS 192.311 - 192.478) (Public Records Law). In particular, the question is whether notebooks that a councilor used to prepare for and to refresh her recollection about matters of the public's business should be deemed to be public records prepared, owned, used, or retained by a public body. This case does not require us to determine that a single councilor is, unto herself, a "public body." That is because the city councilor is a part of a public body, and the councilor's note-making and note-keeping were within the course and scope of her work for that public body. For that reason, I conclude that the notebooks are public records of a public body, and I concur in the disposition of this case to reverse and require disclosure.

I explain that conclusion by putting the legal analysis first, noting briefly my reservations about the majority opinion, and lastly recounting the trial court proceedings that made a better answer elusive and the proceedings forgivable. As the majority opinion recites, "this case is one of statutory interpretation." 319 Or App at 356). When doing statutory interpretation, we have a duty to determine the correct interpretation of a statute, whether or not asserted by the parties. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

Our starting point is the definition section of the Public Records Law.  ORS 192.311(5)(a) provides:

> "'Public record' includes any writing that contains information *relating to the conduct of the public's business*, including but not limited to court records, mortgages, and deed records, *prepared, owned, used or retained by a public body* regardless of physical form or characteristics."

(Emphases added.) There is no dispute that the councilor's notebooks concern "the conduct of the public's business." The councilor declared that, during three terms of office, she used her notebooks to prepare for and to refresh her recollection about city council meetings, neighborhood association meetings, citizen-advisory group meetings, and meetings with individual constituents.

But, are they "prepared, owned, used or retained by a *public body*," within the meaning of ORS 192.311(5)(a)? To go on, we turn to ORS 192.311(4), which provides:

"'Public body' includes every state officer, agency, department, division, bureau, board and commission; every county and *city governing body*, school district, special district, municipal corporation, and any board, department, commission, council, *or agency thereof*; and any other public agency of this state."

(Emphases added.) Can we say that records made and kept by a city councilor are records of the governing body or of a cognizable part thereof? For several reasons, I believe that the answer must be a firm "yes."

First, the councilor is a part of the city council, and the council is the governing body of the city. The majority opinion makes the same point, generally observing that:

"It is undisputed that the city council is the governing body of a city and that city councilors make up the city council. ORS 221.110 (city officers include councilors); ORS 221.120(6) ("The powers of the city shall be vested in the council."); ORS 221.410(1) ("[A] city may take all action necessary or convenient for the government of its local affairs.")."

319 Or App at 358. In this case, West Linn "is a home rule municipality." *See Dodds v. City of West Linn*, 222 Or App 129, 134, 193 P3d 24 (2008) (acknowledging the city's home rule status). And, its governing body is its city council composed of its mayor and four councilors. 1994 West Linn Charter § 7, https://www.codepublishing.com/OR/WestLinn/html/WestLinnCH.html (last visited Apr 20, 2022).

Second, there is no suggestion that the councilor's acts of record-making or record-keeping were outside the course and scope of her duties as a part of the city council. That makes reflection on the doctrine of agency instructive. When the court considers a principal's liability for harm caused by an agent's acts in the scope of the agent's engagement, the court considers several factors. In the context of employment, for example, the court considers whether (1) the act occurred substantially within the time and space limits authorized by the employment; (2) the employee was

motivated, at least partially, by a purpose to serve the employer; and (3) the act is of a kind that the employee was hired to perform. *Minnis v. Oregon Mutual Ins. Co.*, 334 Or 191, 201, 48 P3d 137 (2002). A principal may be liable for the acts of a nonemployee if the principal had a right of control of the conduct. *Eads v. Borman*, 351 Or 729, 738, 277 P3d 503 (2012).

Here, the city council has authority under the charter to adopt rules for its members and proceedings of the council. 1994 West Linn Charter § 13. Indeed, those council rules explicitly provided, "Written information incidental to the official duties of a member of the City Council, including *** notes [and] memos *** are public records and are subject to disclosure under the Public Records Law." City of West Linn Council Rules (Adopted Oct 8, 2018) at 17.[1] Although those rules do not dictate our construction of the Public Records Law, the council's rules demonstrate that the council *does* have a "right of control" over its councilors. Those rules confirm that the councilor's note-making and note-keeping *are* within the course and scope of her work for the council.

If the acts of an employee or nonemployee could be a matter of liability when causing harm, then the councilor's acts of making and keeping records when harmless must assuredly be considered within the scope of her duties.[2] Because making or keeping those records should be seen as a permissible part of her duties, it should not matter whether she shared her records with other councilors or used them simply to help her do her work. Her records were part of the council's work.

Third, there is no exclusion within the definition of a "public body" for records made or kept by a person who

---

[1] The quoted material is from a version of the City of West Linn Council Rules adopted October 8, 2018. After this case was filed in the circuit court, those rules were amended effective June 24, 2019. *See* City of West Linn Council Rules (Adopted June 24, 2019), https://westlinnoregon.gov/sites/default/files/fileattachments/ city_council/page/5344/council_rules_adopted_6-24-19.pdf (last accessed Apr 20, 2022). The quoted material was omitted from the amended rules.

[2] Plaintiff sub-titled a section of his argument on motion for partial summary judgment, asserting, "The requested records, notes and notebooks of an elected official *taken in the course of an elected official's public duties*, are public records as a matter of law." (Emphasis added.)

is a *part* of a "city governing body, \*\*\* municipal corporation, and board, department, \*\*\* or agency thereof."³ ORS 192.311(4). If a record of public business made or kept by a public employee must be a record of the "department" of which the employee is part, and a "department" is a "public body," then a record made or kept by a councilor must be a record of the "city governing body." Nothing in the Public Records Act distinguishes a public record by its location, whether in a file cabinet at work or on a shelf at home—particularly for those who often work from home.⁴ Nothing can distinguish between the minutes prepared by the board's secretary and a councilor's notebooks used to prepare for or to recall public meetings.

I digress briefly to explain my reservations about joining the majority opinion. It is certainly correct to say that the term "includes," appearing in the definition of "public body," should be read broadly and inclusively when finding that the corporate entity of the Oregon State Bar is an instrumentality of the Judicial Department of the State of Oregon. *State ex rel Frohnmayer v Oregon State Bar*, 307 Or 304, 307-08, 767 P2d 893 (1989). But it is something else again to extend that "breadth" to determine that a local elected official *is* herself a public body. "Breadth" that is extended to include an organization as a "public *body*," as in *Frohnmayer*, does not necessarily imply the same for a local officer.

That is particularly true when the legislature knew how to make a specific deviation from its list of collective groups ("boards" or "commissions") or organizational entities ("departments" or "agencies") by saying "state officer" but presumably choosing not to say "local officer." *See* ORS 192.311(4) (employing "state officer" but not "local officer"); ORS 174.010 (a judge may not insert what is omitted from a statute); *Tarr v. Multnomah County*, 306 Or App 26, 34-35, 473 P3d 603 (2020), *rev den*, 367 Or 496 (2021) ("[T]he

---

³ The majority opinion makes a different point that there is no exclusion to prevent a local officer from being deemed a public body herself. 319 Or App at 365-66.

⁴ This point finds indirect support in the breadth of the definition of a "public record" when the definition concludes with reference to records "regardless of form or characteristics." *See* ORS 192.311(5)(a) (concluding phrase).

legislature knew how to craft an exception to [a land use] rule when it wanted one and, in particular, that it knew how to set forth the scope of any such exception. * * * But rewriting statutes 'to insert what has been omitted' falls outside of 'the office of the judge.' ORS 174.010. For that reason, we may not do it under the cloak of interpretation."); *Harper v. Mt. Hood Community College*, 283 Or App 207, 212, 388 P3d 1170 (2016) ("The statutes reveal that the legislature knows how to create an exception to the term 'employee.'")

It is certainly worthwhile to observe that the first-step remedy for nondisclosure by a local or state elected official is with the circuit court rather than a district attorney or the attorney general as it is with other local or state agencies. 319 Or App at 360 (citing ORS 192.427). Similarly, it is worthwhile to observe that 1973 legislative history—the best example that can be garnered—shows that Attorney General Johnson, speaking as a witness, indicated that records in the custody of local elected officials could be subject to a remedy of disclosure through the circuit court. *Id*. at 364-65. Those clues show a contextual recognition that somehow local elected officials are subject to the Public Records Law. However, that recognition merely begs the question; it does not lend support to answer it. Local officers may be subject to the Public Records Law simply because the local officers are *part* of a board or agency that is a "public body." To me, that is an easier implication—a more plausible construction—than to conclude that a single city councilor is herself a "public body."

With those reasons and reservations, I conclude that a councilor, acting within the course and scope of her duties, is acting as a member of and on behalf of the governing body when she "prepares" and "retains" records to assist her in her public work. *See* ORS 192.311(5)(a) (a public record is one "prepared" or "retained" by a public body). Her notebooks are public records subject to disclosure.

I fault neither plaintiff nor the trial court for failing to arrive at what I suspect is a correct construction of these statutes. To his credit, plaintiff's original complaint set up the issue appropriately by alleging that defendant was a city councilor, that she kept notebooks on city business, and that

those notebooks are public records subject to disclosure. However, given the city's refusal that claimed it did not have custody of such records, plaintiff apparently felt compelled to amend his complaint to allege that defendant councilor was a public body who had the records.

It is no wonder then that, at argument on summary judgment, the trial court asked this unrepresented plaintiff, "[D]o you agree that if the defendant, Ms. Cummings, is not a public body, you lose?" Plaintiff agreed. Contributing to misdirection, defendant argued that, because the definition of "public body" mentioned "state officer" but did not mention "local officer," the records of an individual local officer could not be records of a "public body." The trial court agreed, commenting, "I see no reason why that doesn't end the case."[5]

Plaintiff's statements were perilously close to invited error. *See State v. Saunders*, 294 Or App 102, 105, 429 P3d 1049 (2018), *rev den*, 364 Or 294 (2019) (A party invites error when the party is actively instrumental in causing the trial court to rule a particular way.). In my view, plaintiff avoided that peril because plaintiff argued *for* disclosure, not against disclosure of the records. *See State v. Shaw*, 338 Or 586, 606 n 14, 113 P3d 898 (2005) (rejecting defendant's invited-error argument where state's argument was not urging dismissal of indictment). Further, plaintiff argued that a councilor, with respect to the city council, was an "agency thereof," as the term is used in ORS 192.311(4). He argued a dictionary definition to suggest that a person could exert the power of an "agency." Plaintiff resisted the conclusion that the absence of "local officer" from the definition was the "end of the case." His argument was a way of saying that the councilor is an agent of the council, such that her records are its records. Although imperfect, his argument pointed to a correct construction of the statute.

As noted at the outset, it is our duty, absent invited error, to arrive at a correct construction of ORS 192.311(4)

___

[5] While I might agree with defendant about the omission of "local officer," defendant's argument proves too much when concluding with nondisclosure. That is because the records of local officers are also records of their respective boards or agencies, just like the records of employees as to their departments or agencies.

and (5)(a), regardless of the arguments of the parties. *Stull*, 326 Or at 77; *see Miller v. Water Wonderland Improvement District*, 326 Or 306, 951 P2d 720 (1998) (public records case). This is a legal issue of statutory construction—one of significance—that requires us to "get it right," even if the parties did not. My effort may fall short. But I respectfully suggest that a correct construction of the statutes is that, because the councilor is a part of a governing body—not that she *is* a governing body—her personal notebooks on city business are public records subject to disclosure. Therefore, I concur in the result, if not the reasoning, of the majority.